<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
CHAMPION LABORATORIES, INC.,            :
:
              Plaintiff,            :
:
    v.                                       :         **OPINION**
:         **Civ. No. 02-5284 (WHW)**
METEX CORP., et al.,                    :
:
              Defendants          :
_____:

**<u>Walls, District Judge:</u>**

      Defendant Metex Corporation ("Metex") moves for summary judgment on all counts of the second amended complaint ("Complaint") of plaintiff Champion Laboratories, Inc. ("Champion"). Pursuant to Fed.R.Civ.P. 78, the motion is decided without oral argument. The motion is granted in part and denied in part.

**FACTS AND PROCEDURAL HISTORY**

      Champion, the corporate successor to Interlee, Inc. ("Interlee"), operates a facility located at 191 Talmadge Road in Edison, New Jersey (the "Champion Site"). Metex is a is a automotive parts manufacturer which operates a facility adjacent to the Champion Site.

      Champion purchased Interlee in 1985 (further references to "Champion" will include both Champion and Interlee). The sale triggered the application of the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 et seq. To comply with statute, Champion began an environmental audit of the Champion Site. The investigations revealed the existence of a holding tank containing contaminated sludge. In 1987, IT Corporation ("IT"), a former environmental

1

**NOT FOR PUBLICATION**

consultant of Champion, remediated the former holding tank by attempting to remove the top and the remainder of the tank's contents. Once the top was removed, groundwater was observed entering the tank through cracks that in the walls of the tank. The New Jersey Department of Environmental Protection ("DEP") ordered Champion to halt the decommissioning of the tank, remove the remainder of the tank's contents, and initiate groundwater monitoring.

Groundwater monitoring revealed the existence of groundwater contamination throughout the Champion Site. Champion submitted a remediation plan to the DEP, which responded by requesting additional monitoring wells and further delineation of the containment plume in 1988, 1991 and 1993.

During this period, Metex also triggered ISRA and conducted a groundwater investigation on its property adjacent to the Champion Site, at 206 Talmadge Road (the "Metex Site"). According to Shaw Environmental, Inc. ("Shaw"), Champion's environmental consultants, Metex's property is hydrologically upgradient of the Champion Site, and the groundwater contamination at the Champion Site was caused by contamination migration from the Metex Site. Champion presented data in support of that conclusion to the DEP in April 1998.

In December 1998, the DEP informed Champion of its view that there was insufficient data to determine that the contamination at the Champion Site was solely from the Metex Site. Metex refused to cooperate with Champion's efforts to further investigate the source of the contamination. Champion commenced litigation in New Jersey state court and eventually gained access to the Metex Site to conduct testing. Champion submitted another round of reports to the DEP, both of which concluded that a majority of the contamination at the Champion Site had

2

**NOT FOR PUBLICATION**

migrated from the Metex Site. Champion proposed that the DEP not require it to take any further action with respect to the groundwater at the Champion Site.

The DEP, however, rejected Champion's proposal. Champion responded that it would not perform additional remediation on its site until Metex remediated the contamination on the Metex Site. In July 2002, the DEP sent Champion a Notice of Violation ("NOV") directing Champion to install 12 additional groundwater monitoring wells and threatening penalties of $50,000 per day for violation of the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11a et seq., and $25,000 per day for violation of ISRA.

Champion filed its original complaint in November 2002, naming Metex, the DEP and Ivy Equities (another nearby property owner) as defendants. The original complaint asserted that contaminants emanating from the Metex Site are "primarily responsible" for contamination of the Champion Site. Champion filed an amended complaint in January 2004, removing the DEP as a defendant and instead naming individual agency personnel. The DEP filed a motion to dismiss, which this Court granted on May 9, 2003 as to the agency and the individual defendants.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Chippollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en banc), cert. denied, 483 U.S. 1052 (1987). In deciding a motion for summary judgment, a court must construe all facts and inferences in the

**NOT FOR PUBLICATION**

light most favorable to the nonmoving party. Boyle v. Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine"if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor. Id. He cannot simply reassert factually unsupported allegations contained in his pleadings. See Celotex, 477 U.S. at 325; Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir. 1994). Further, only evidence that would be admissible at trial may be used to test a summary judgment motion; evidence with a deficient foundation must be excluded from consideration. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

## DISCUSSION

**I. CERCLA CLAIMS**

    A.    Section 107(a)

Champion asserts a claim for response costs against Metex under CERCLA § 107(a), 42 U.S.C. § 9607(a).[1] In order to prove CERCLA liability under section 107, a plaintiff must

---

[1] 42 U.S.C. § 9607(a) reads, in relevant part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section–
>     (1) the owner and operator of a vessel or a facility,
>     (2) any person who at the time of disposal of any hazardous substance

**NOT FOR PUBLICATION**

prove: 1) that the defendant is a PRP [potentially responsible party];[2] 2) that hazardous substances were disposed of at a "facility"; 3) that there has been a "release" or "threatened" release of hazardous substances from the facility into the environment; and 4) that the release or threatened release has required or will require the plaintiff to incur "response costs." N.J. Tpk. Auth. v. PPG Indus., Inc., 197 F.3d 96, 103-04 (3d Cir. 1999).

The Third Circuit has held that a potentially responsible party ("PRP") may not bring a section 107 cost recovery action against another PRP. New Castle County v. Halliburton NUS

---

        owned or operated any facility at which such hazardous substances were disposed of
(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for–
        (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
        (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.
42 U.S.C. § 9607(a) (emphasis added).
    "The 'national contingency plan' is a set of regulations promulgated by the EPA that establishes procedures and standards for responding to releases of hazardous substances, pollutants and contaminants. 42 U.S.C. § 9605; see 40 C.F.R. Part 300 (1995)." New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1120 n.2 (3d Cir. 1997).

    [2]A "potentially responsible party" is one that falls within one of the categories defined in § 9607(a)(1)-(4).

5

**NOT FOR PUBLICATION**

Corp., 111 F.3d 1116, 1119 (3d Cir. 1997). A section 107 cost recovery action may only be pursued by an innocent party that has undertaken hazardous waste cleanup, and section 107 imposes strict liability and joint and several liability on PRPs for costs associated with cleanup and remediation. New Jersey Turnpike Auth. v. PPG Indus., 197 F.3d 96, 104 (3d Cir. 1999) (citing Halliburton, 111 F.3d at 1120-21); Degussa Constr. Chem. Operations, Inc. v. Berwind Corp., 280 F. Supp. 2d 393, 400 (E.D.Pa. 2003).

Here there is no dispute that Champion is the owner of the subject property and is therefore a PRP under section 107. Champion does not assert an innocent third-party defense in the complaint, but argues in its opposition brief that it is entitled to the third-party defense enumerated in § 107(b)(3), which provides in relevant part:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by . . . (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly with the defendant . . . , if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned . . . , and (b) he took precautions against foreseeable acts or omissions of any such third party . . . .

[42 U.S.C. § 9607(b)(3).]

Champion argues that the only alleged discharge at the Champion site occurred during the decomissioning of a holding tank on its property. The decomissioning was performed by Champion's former environmental consultants, IT Corporation. Champion argues that IT is neither an employee nor an agent of Champion, that Champion did not have a contractual relationship with IT as defined under CERCLA, and that it acted with due care with regard to the

**NOT FOR PUBLICATION**

potential contaminants located in the holding tank.

The term "contractual relationship" for purposes of § 107(b)(3), "includes, <u>but is not limited to</u>, land contracts, deeds, easements, leases or other instruments transferring title or possession." 42 U.S.C. § 9601(35)(A). Other courts have interpreted the "contractual relationship" provision to include any contract which relates to hazardous substances or allows the contracting party to "exert some element of control over the third party's activities." <u>See Westwood Pharmaceuticals v. Natl. Fuel Gas Dist.</u>, 964 F.2d 85, 89 (2d. Cir 1992); <u>Lincoln Properties, Ltd. v. Higgins</u>, 823 F.Supp. 1528, 1543 (E.D. Cal. 1992) (holding that a "landowner is precluded from raising the third-party defense only if the contract between the landowner and the third party is somehow connected with the handling of hazardous substances.") Champion hired IT to assist Champion in the DEP and ISRA proceeding, which is clearly related to the decision to decommission the holding tank. Champion does not cite any authority for the proposition that a "contractual relationship" under CERCLA contract is limited to "an interest in land." Because Champion is a PRP under CERCLA and cannot avail itself of the third-party defense, it does not have standing to bring a cost recovery claim under § 107(a).

B.  <u>Section 113</u>

Count two also asserts a claim for contribution under CERCLA § 113(f)(1), 42 U.S.C. §9613(f)(1).[3] Section 113(f)(1) allows parties who have undertaken efforts to clean up properties contaminated by hazardous substances to seek contribution from other parties liable

---

[3] Section 113(f) of CERCLA provides, in pertinent part, "Any person may seek contribution from any other person who is liable or potentially liable under section 107(a), during or following any civil action under section 106 or under section 107(a)."

7

**NOT FOR PUBLICATION**

under CERCLA. Section 113(f)(1) specifies that a party may obtain contribution "during or following any civil action" under CERCLA § 106 or § 107(a). The United States Supreme Court recently held that a private party who has not been sued under § 106 or § 107(a) may not bring a contribution claim under § 113(f)(1). See Cooper Industries, Inc. v. Aviall Services, Inc., 125 S.Ct. 577 (2004). Aviall was decided after Metex's motion was fully briefed, and renders moot Champion's argument that a federal common-law right to contribution survived the enactment of § 113(f)(1). Because no suit has been brought against Metex under § 106 or § 107(a) Champion does not have standing to bring a contribution claim under § 113(f)(1). Count II of the complaint is dismissed.

**II.      COMMON LAW CLAIMS**

Champion asserts five common law tort claims against Metex: indemnification (count one), negligence (count four), abnormally dangerous activity (count five) and nuisance and trespass (count six). Metex argues that these claims are barred by New Jersey's six-year statute of limitations on tort claims in which damage to property is alleged. N.J.S.A. 2A:14-1. Champion argues that its tort claims are not barred because the contamination from the Metex Site is a continuing tort.

"When an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Ali v. Rutgers, 166 N.J. 280, 286 (2000) (quoting Wilson v. Wal-Mart Stores, 158 N.J. 263, 271 (1999). At least one court in this district has found the continuing tort doctrine applicable to common law claims brought in environmental cases to prove timely filing pursuant to N.J.S.A. 2A:14-1. See

**NOT FOR PUBLICATION**

Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 263 F.Supp.2d 796, 857 (D.N.J. 2003) (citing Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84 (1996)).

  Metex argues that the continuing tort doctrine is not applicable in this case because the groundwater contamination at the Champion Site has continued unabated since Champion first discovered the contamination in 1986. In Russo Farms, the plaintiff claimed to have suffered repeated injury when intermittent flooding in combination with an inadequately constructed drainage system caused rainwater to flow onto plaintiff's farm. The problem occurred repeatedly over a ten year period, with each incident of rain resulting in recurring damage to soil and crops. During a three-year dry spell damage to plaintiffs farm was minimal and plaintiff was able to temporarily abate the problem at certain points during the period. As the problem intensified and the conditions worsened, plaintiff filed suit to permanently abate the problem. See id. at 99. The Russo Farms court determined that the "temporary" and "continuous" nature of the flooding constituted a continuing tort, but noted that had the nuisance been "deemed permanent, there [would have been] only one unceasing invasion of the Plaintiff's interests and only one cause of action. This necessarily arises when the invasion first began or was first manifest." Id. at 102 (quoting Dan B. Dobs, Law of Remedies § 5.4, at 343 (1973)). In other words, Russo Farms held that a party who creates a hazard that "can be physically removed or legally abated" is under a continuing legal duty to remedy the condition.

  In Interfaith Cmty., the court relied on Russo Farms to find a continuous tort where defendant failed to cease its abnormally dangerous activity. See Interfaith Cmty., 263 F.Supp.2d at 857. That defendant's disposal of hazardous chemicals continued to harm the plaintiff well

**NOT FOR PUBLICATION**

into the period of limitations, and the court found that defendant could "physically remove or legally abate" the condition by excavating and removing the hazardous chemical from the property. See id.

Under the New Jersey Supreme Court's holding in Russo Farms, the Court finds that Metex's contamination of the Champion Site constitutes a continuing violation. Although Champion was aware of the contamination as early as 1986, and had concluded that Metex was responsible for the contamination as early as 1992, contamination migrating from the Metex Site was not a "permanent" nuisance that could not have been abated. During much of the past 10 years, Champion has been working with the DEP to collect data on the sources of the contamination and to remediate the contamination. Any contamination originating from the Metex site and migrating to the Champion Site continues to contaminate the groundwater at the Champion Site. As a result, Champion's common-law tort claims against Metex have been timely filed pursuant to N.J.S.A. 2A:14-1 and the continuing tort doctrine.

**III.   NEW JERSEY SPILL ACT CLAIM**

Count three asserts a claim for contribution under the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10-23.11a et seq. Metex argues that the Spill Act claim is also barred by the six-year statute of limitations set forth in N.J.S.A. 2A:14-1 because Champion believed that an off-site facility was the likely source of groundwater contamination at the Champion Site as early as January 1992, more than ten years before Champion filed its claim.

The Spill Act does not expressly provide a statute of limitations, see N.J.S.A. 58:10-23.11f and 23g. Nor is there controlling New Jersey law on the applicability of a statute of

**NOT FOR PUBLICATION**

limitations defense to a private party contribution brought under the Spill Act.  In the absence of precedent from the Supreme Court of New Jersey, this Court must predict how that court would rule.  Blum v. Witco Chemical Corp., 829 F.2d 367, 376 (3d Cir. 1987).

Where a remedial statute contains no period of limitations, courts are directed to select a limitations period from among those statutes of limitation for actions seeking comparable relief at common law.  See  Montells v. Haynes, 133 N.J. 282, 292 (1993), Skadegaard v. Farrell, 578 F.Supp. 1209, 1214 (D.N.J.1984).

A private cause of action for contribution under the Spill Act is most analogous to a common law environmental tort claim, for which the period of limitations is six years.  See New West Urban Renewal Co. v. Westinghouse Elec. Corp., 909 F.Supp. 219, 228 (D.N.J. 1995).  Champion's claim arose, at the latest, in 1992 when it determined that the contamination it had discovered six years early was most likely caused by migration from an off-site facility.  Champion did not file this suit until 2002.  Champion's Spill Act claim is barred because it arose more than six years before suit was filed.

## CONCLUSION

Metex's motion for summary judgment is granted as to counts two and three and denied as to counts one, four, five and six.

**s/ William H. Walls, U.S.D.J.**