**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| CHAMPION LABORATORIES, INC., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 02-5284 (WHW) |
| | : | |
| METEX CORPORATION et al., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**Walls, Senior District Judge**

This matter is before the Court on Defendant Metex Corporation's ("Metex") motion to dismiss count three of Champion Laboratories, Inc.'s ("Champion") Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Champion's motion to dismiss the count one, two and three of Metex's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) and Metex's cross-motion to amend the count one of its counterclaim pursuant to Federal Rule of Civil Procedure 15. Having considered paper submissions and oral arguments of the parties, the Court denies in part and grants in part Metex's motion to dismiss count three of Champion's Third Amended Complaint, grants Metex's motion to amend count one of its counterclaim, and denies Champion's motion to dismiss count one, two and three of Metex's counterclaim.

## BACKGROUND

Plaintiff Champion, an Illinois corporation and the corporate successor to Interlee, Inc. ("Interlee"), operates a facility located at 191 Talmadge Road in Edison, New Jersey (the

**NOT FOR PUBLICATION**

"Champion site").  Defendant Metex is a New York corporation with its principal executive office located at 970 New Durham Road in Edison, New Jersey.

Champion purchased Interlee in December 1985 (further references to "Champion" will include both Champion and Interlee).  The sale triggered the application of the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-6 et seq.  To comply with statute, Champion began an environmental audit of the Champion site.  The investigations revealed the existence of a holding tank containing contaminated sludge.  In 1987, IT Corporation ("IT"), a former environmental consultant of Champion, remediated the former holding tank by attempting to remove the top and the remainder of the tank's contents.  Once the top was removed, groundwater was observed entering the tank through cracks in the walls of the tank.  The New Jersey Department of Environmental Protection ("NJDEP") ordered Champion to halt the decommissioning of the tank, remove the remainder of the tank's contents, and initiate groundwater monitoring.

Groundwater monitoring revealed the existence of groundwater contamination throughout the Champion site.  Champion submitted a remediation plan to the NJDEP, which responded by requesting additional monitoring wells and further delineation of the containment plume in 1988, 1991 and 1993.

During this period, Metex also triggered ISRA and conducted a groundwater investigation on its property adjacent to the Champion site, at 206 Talmadge Road (the "Metex site").  According to Shaw Environmental, Inc. ("Shaw"), Champion's environmental consultants, Metex's property is hydrologically upgradient of the Champion site, and the groundwater

-2-

**NOT FOR PUBLICATION**

contamination at the Champion site was caused by contamination migration from the Metex site.

Champion presented data in support of that conclusion to the NJDEP in April 1998.

In December 1998, the NJDEP informed Champion of its view that there was insufficient

data to determine that the contamination at the Champion site was solely from the Metex site.

Metex refused to cooperate with Champion's efforts to further investigate the source of the

contamination. Champion commenced litigation in New Jersey state court and eventually gained

access to the Metex site to conduct testing. Champion submitted another round of reports to the

NJDEP, both of which concluded that a majority of the contamination at the Champion site had

migrated from the Metex site. Champion proposed that the NJDEP not require it to take any

further action with respect to the groundwater at the Champion site.

The NJDEP, however, rejected Champion's proposal. Champion responded that it would

not perform additional remediation on its site until Metex remediated the contamination on the

Metex site. In July 2002, the NJDEP sent Champion a Notice of Violation ("NOV") directing

Champion to install twelve additional groundwater monitoring wells and threatening penalties of

$50,000 per day for violation of the New Jersey Spill Compensation and Control Act ("Spill

Act"), N.J.S.A. 58:10-23.11a et seq., and $25,000 per day for violation of ISRA.

Champion filed its original complaint on November 1, 2002, naming Metex, the NJDEP

and Ivy Equities, Inc.[1] ("One Ethel Road Associates") as defendants. One Ethel Road Associates

is the owner of the property on One Ethel Road in Edison, New Jersey. The One Ethel Road site

---

[1] On February 19, 2003, One Ethel Road Associates answered Champion's complaint in the stead of Ivy Equities, Inc. and responded that One Ethel Road Associates were incorrectly designated as Ivy Equities Inc.

**NOT FOR PUBLICATION**

is located between the Champion site and the Metex site. The original complaint asserted that

contaminants emanating from the Metex site are "primarily responsible" for contamination of the

Champion site. Champion filed an amended complaint on January 27, 2003, removing the

NJDEP as a defendant and instead naming individual agency personnel. The NJDEP filed a

motion to dismiss, which this Court granted on May 9, 2003 as to the agency and the individual

defendants.

On July 22, 2004, Champion, with leave of court, filed a second amended complaint. On

July 29, 2004 Metex submitted its motion for summary judgment on counts one through six of

Champion's second amended complaint. On June 28, 2005, the Court granted summary

judgment to Metex on counts two and three, but denied judgment on counts one, four, five and

six.

On April 24, 2007, counsel for Champion and for Metex appeared before this Court and

requested an adjournment of the trial date from May 22, 2007 to May 6, 2008 in light of the

Supreme Court's then-pending decision in United States v. Atlantic Research Corp., --- U.S. ---,

127 S. Ct. 2331 (2007). The Court granted that request. On June 11, 2007, the Supreme Court

handed down its decision in Atlantic Research, clarifying the law on the Comprehensive

Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.,

("CERCLA") cost recovery and contribution claims. On July 13, 2007, this Court entered a case

management order permitting both parties to amend their pleading in light of Atlantic Research.

On August 14, 2007, Champion filed its third amended complaint. (Dkt. Entry No. 96,

August 14, 2007.) ("3d Am. Compl.") Metex responded with an answer, affirmative defenses,

NOT FOR PUBLICATION

counterclaims and a third party complaint on September 11, 2007.  In Metex's counterclaim,

Metex alleges that it is entitled to certain relief for costs Metex has incurred arising out of the

environmental condition, investigation and remediation of the One Ethel Road site.  By letter

dated January 28, 1994, NJDEP requested that Metex install cluster wells down-gradient and off-

site of the Metex site to delineate the extent of the contamination plume found on its property.

Pursuant to a Right Access Agreement with One Ethel Road Associates dated July 17, 1995,

Metex installed three monitoring wells on the One Ethel Road site in connection with NJDEP's

request.  Contamination has been found in the monitoring wells installed into the groundwater

beneath the One Ethel Road site.

On August 14, 2007, Metex filed its motion to dismiss count three of Champion's third

amended complaint.  On October 9, 2007, Champion opposed Metex's motion to dismiss and

filed a motion to dismiss counts one, two and three of Metex's counterclaim.  On October 29,

2007, Metex filed a cross-motion to amend count one of its counterclaim.


## STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court is required to accept

as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom,

and to view them in the light most favorable to the non-moving party.  Pinker v. Roche Holdings

Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).  The Supreme Court has recently clarified the Rule

12(b)(6) standard in Bell Atlantic v. Twombly, 550 U.S. --, 127 S. Ct. 1955, 1965 (2007).  A

complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's

**NOT FOR PUBLICATION**

entitlement to the relief sought.  Id. at 1965-66 (abrogating Conley's standard that the "complaint

should not be dismissed for failure to state a claim unless it appears beyond a doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief";

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added)).  This "entitlement to relief"

requires "more than labels and conclusions, and a formulaic recitation of a cause of action's

elements will not do."  Id. at 1964-65.  In other words, it must contain sufficient factual

allegations to raise a right to relief above the speculative level.  Id.

        While a court will accept well-pled allegations as true for the purposes of the motion, it

will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions

cast in the form of factual allegation.  Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977).

Moreover, the claimant must set forth sufficient information to outline the elements of his claims

or to permit inferences to be drawn that these elements exist.  Fed. R. Civ. P. 8(a)(2); Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  In addition to the allegations of the Complaint, the Court

may consider documents attached to or specifically referenced in the Complaint, and matters of

public record, without converting the motion to dismiss into one for summary judgment.  See

Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004); Sentinel Trust Co. v.

Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).  "Plaintiffs cannot prevent a court

from looking at the texts of the documents on which its claim is based by failing to attach or

explicitly cite them."  Id.  Any inquiry beyond the complaint and documents integral to the

complaint may require conversion of the motion into one for summary judgment.  Fed. R. Civ. P.

12(b).

NOT FOR PUBLICATION

## DISCUSSION

It is important to note the procedural history of this case in light of the Supreme Court's recent decision in  United States v. Atlantic Research Corp., --- U.S. ---, 127 S. Ct. 2331 (2007). On July 29, 2004, Metex filed a motion for summary judgment on all counts of the Second Amended Complaint and the Court granted the motion as to Champion's CERCLA claims, among other claims.  Champion Labs. v. Metex Corp., No. 02-5284, 2005 U.S. Dist. LEXIS 37068 (D.N.J. July 8, 2005).  This Court held pursuant to New Castle County v. Halliburton NUS Corp., 111 F.3d 1116 (3d Cir. 1997) and New Jersey Turnpike Auth. v. PPG Indus., 197 F.3d 96, 104 (3d Cir. 1999), that Champion did not have standing to sue under CERCLA section 107(a) because it is a potentially responsible party ("PRP").  This Court wrote:

> A section 107 cost recovery action may only be pursued by an innocent party that has undertaken hazardous waste cleanup, and section 107 imposes strict liability and joint and several liability on PRPs for costs associated with cleanup and remediation.

Champion, 2005 U.S. Dist. LEXIS 37068, at *8-11 (citing New Jersey Turnpike Auth., 197 F.3d at 104) (emphasis added).  This Court also held that pursuant to the decision in Cooper Indus. v. Aviall Servs., 543 U.S. 157 (2004), Champion lacked standing to sue under CERCLA Section 113(f)(1) because it had not been sued under CERCLA sections 107 or 107(a).  Champion, 2005 U.S. Dist. LEXIS 37068, at *11-12.

In Atlantic Research, the Supreme Court settled a dispute among the Circuits and overruled the Third Circuit precedents upon which this Court relied.  127 S. Ct. at 2334-35. Atlantic Research leased a property owned by the Department of Defense and retrofitted rocket motors for the United States.  Id. at 2335.  It used high-pressure water spray to remove pieces of

**NOT FOR PUBLICATION**

propellant from the motors and then burned the propellant pieces.  Id.  That waste water and

burned fuel contaminated the soil and groundwater at the site.  Instead of waiting to be sued

under CERCLA, Atlantic Research cleaned the site and sought recovery of some of its cost from

the United States.  Under certain precedents, Atlantic Research could not bring a section 107(a)

claim because it was a potentially responsible party.  Id.  Because of the perceived conflict

among the Circuits, the Supreme Court resolved the issue of whether a potentially responsible

party, who incurred costs for a cleanup but does not meet the requirements for bringing

contribution action under section 113(f) of CERCLA, may bring an action against another

potentially responsible party under section 107(a) of CERCLA.  Id.  The Supreme Court held that

it may bring a section 107(a) action.  Id. at 2339.

Anticipating that an imminent decision would issue by the Supreme Court, the parties

sought leave to file amended pleadings consistent with the Atlantic Research decision, which this

Court granted July 13, 2007 in a case management order ("July 2007 Case Mgmt. Order").  Mr.

Michael Adelman, counsel for Champion, on behalf of counsel for both parties, wrote "[b]oth

parties agree that the Atlantic Research decision permits each party to amend its pleadings to

assert a cost recovery claim under Section 107 of CERCLA" and requested leave to amend their

pleadings.  July 11, 2007 letter from Michael Adelman to this Court.  The July 2007 Case Mgmt.

Order was less specific and simply permitted the parties "leave to file amended pleadings and

responses thereto in light of . . . United States v. Atlantic Research."  July 2007 Case Mgmt.

Order.

NOT FOR PUBLICATION

### A.    Count Three of Champion's Third Amended Complaint

Metex moves to dismiss count three of Champion's Third Amended Complaint.  Metex argues that (1) Champion is not permitted to amend the Second Amended Complaint and assert a new contribution claim under section 113(f) of CERCLA because the amendment exceeds the scope of this Court's July 2007 Case Mgmt. Order and (2) that this amendment is futile because it fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  Count three provides that Champion "requests entry of judgment against defendant Metex[,] [d]eclaring that, pursuant to section 113(f) CERCLA, 42 U.S.C. § 9613(f), Metex is liable to [Champion] for Metex's share of contribution for natural resource damages incurred by Interlee at or in connection with the 191 Property [the Champion site]."  3d Am. Compl. at ¶ 44.

The Court finds that Champion's amendment is permitted according to this Court's July 2007 Case Mgmt. Order because that Order only limited amendments that relate to Atlantic Research.  Although the holding in Atlantic Research decided the narrow issue of whether a potentially responsible party may sue another potentially responsible party under section 107(a) of CERCLA, the Supreme Court extensively examined and explained the interplay between section 107(a) and section 113(f) in support of its decision.  Atlantic Research, 127 S. Ct. 2331.  Furthermore, the Third Circuit has permitted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities."  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).

Champion seeks contribution from Metex pursuant to sections 113(f)(1) and 113(f)(3)(B) of CERCLA.  The Court finds that Champions' amendment is not futile because it does state a

NOT FOR PUBLICATION

claim upon which relief can be granted under section 113(f)(3)(B) of CERCLA but not under

section 113(f)(1) of CERCLA.

Section 113(f)(1) provides in relevant part that "[a]ny person may seek contribution from

any other person who is liable or potentially liable under section 9607(a) of this title, during or

following any civil action under section 9606 of this title or under section 9607(a) of this title."

42 U.S.C. § 9613(f)(1). For Champion to properly assert a contribution action under section

113(f)(1), it must first have been sued under section 106 or section 107 of CERCLA, 42 U.S.C.

§§ 9606, 9607. Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157, 168 (2004). Metex

is correct that Champion has not alleged factually that Champion may be subject to liability

during or following a civil action under section 106 or 107 of CERCLA. Accordingly,

Champion's claim pursuant to section 113(f)(1) of CERCLA is dismissed.

Champion brought its section 113(f)(3)(B) claim in connection with its Consent

Judgment with the NJDEP. Section 113(f)(3)(B) of CERCLA provides that:

> A person who has resolved its liability to the United States or a State for some or all
> of a response action or for some or all of the costs of such action in an administrative
> or judicially approved settlement may seek contribution from any person who is not
> party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f)(3)(B). Champion has sufficiently alleged two elements for a section

113(f)(3)(B) claim. Champion has entered into a judicially approved settlement with NJDEP and

Metex is not a party to that settlement.

The central dispute between the parties is whether the liability resolved between

Champion and NJDEP is "for some or all of a response action or for some or all costs of such

action." Metex challenges the Consent Judgment because it did not resolve liability for a

-10-

NOT FOR PUBLICATION

"response action" but rather for "natural resource damages" and that these two types of liabilities

are mutually exclusive.  Metex cites to <u>Consolidated Edison Company of New York, Inc. v. UGI</u>

<u>Utilities, Inc.</u>, 423 F.3d 90, 96 (2d Cir. 2005), <u>cert. denied</u>, 127 S. Ct. 2995 (2007) and <u>United</u>

<u>States v. Asarco</u>, No. CV 96-0122-N-EJL, 1998 WL 1799392 (D. Idaho March 31, 1998) for

support.

     In <u>UGI Utilities</u>, the Second Circuit held that "section 113(f)(3)(B) does not permit

contribution actions based on the resolution of liability for state law–but not CERCLA–claims."

423 F.3d at 96.  The Second Circuit explained:

> We read section 113(f)(3)(B) to create a contribution right only when liability for
> CERCLA claims, rather than some broader category of legal claims, is resolved. This
> seems clear because resolution of liability for "response action[s]" is a prerequisite
> to a section 113(f)(3)(B) suit-and a "response action" is a CERCLA-specific term
> describing an action to clean up a site or minimize the release of contaminants in the
> future.

<u>Id.</u>  Parsing through the term "response action" with the language from other CERCLA

definitions, the Second Circuit noted that:

> CERCLA defines the term "response" to mean "remove, removal, remedy, and
> remedial action" and all "enforcement activities related thereto." 42 U.S.C. §
> 9601(25). "The terms 'remove' or 'removal' means [inter alia ] the cleanup or
> removal of released hazardous substances from the environment." <u>Id.</u> § 9601(23).
> The terms "remedy" or "remedial action" mean inter alia"those actions consistent
> with permanent remedy taken instead of or in addition to removal actions . . . to
> prevent or minimize the release of hazardous substances." <u>Id.</u> § 9601(24).

423 F.3d at 96 n.6.

     Metex refers to <u>Asarco</u> for the proposition that the cost for "response action" does not

include cost for "natural resource damages."  1998 WL 1799392, at *3.  There, the district court

believed that

NOT FOR PUBLICATION

> "response actions" do not appear to include natural resource damages actions which are set forth in § 107(a)(4)(C) . . . an analysis of CERCLA for "response actions" and "natural resource damages" establishes that Congress intended to treat "response actions" differently than "natural resource damages" claims. . . . This Court declines to extend §§ 9613(j) and (k) to natural resource damages claims when the intent of Congress to include such does not exist and when such interpretation would be in conflict with the rules of statutory construction.

Id. at *3-4. Based on the interpretations provided in UGI Utilities and Asarco, Metex argues that Champion's settlement for "natural resource damages" with NJDEP does not permit Champion to claim contribution for a "response action" from Metex under section 113(f)(3)(B).

This Court finds UGI Utilities persuasive but not Asarco. UGI Utilities does not necessarily support Metex's ultimate point. UGI Utilities is a Circuit opinion that takes into account the recent Supreme Court decision in Cooper Industries (2005), while Asarco is a 1998 district court opinion factually distinguishable from this case. In UGI Utilities, the Second Circuit identified the "operative question in deciding whether [the plaintiff's] claims arise under section 113(f)(3)(B), then, is whether [the plaintiff] resolved its CERCLA liability before bringing suit against [defendant]." UGI Utilities, 423 F.3d at 96. To answer this question, the Second Circuit examined the Voluntary Cleanup Agreement between Con Ed and the New York State Department of Environmental Conservation. The Second Circuit found that the language in that agreement resolved only the liability for state law claims but not CERCLA claims and that the agreement "leaves open the possibility that the Department might still seek to hold Con Ed liable under CERCLA." Id. at 96-97. For these reasons, "Con Ed may not pursue its action under section 113(f)(3)(B)."

**NOT FOR PUBLICATION**

Here, rather than dismissing Champion's 113(f)(3)(B) claim under Rule 12(b)(6) on a technical reading of the term "response action" which has some support but is not definitive, this Court will follow the Second Circuit in <u>UGI Utilities</u> and look to the operative issue of whether Champion resolved CERCLA liability with the NJDEP before seeking contribution from Metex under CERCLA section 113(f)(3)(B).

Champion entered into a Consent Judgment with NJDEP in <u>NJDEP v. Talmadge Realty Co.</u>, Dkt. No. MID-L-3018-06, resolving its liability to New Jersey for "hazardous substances discharged at the American Bindery Site [the Champion site] that have resulted in damages to natural resources." (Consent Judgment, ¶ E, Ex. I to Adelman Decl.) The Consent Judgment defines "natural resource damages" as including CERCLA liability:

> all claims, arising from discharges at the American Bindery Site that occurred prior to the effective date of this Consent Judgment and that are recoverable by the Department as Natural Resource Damages under the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, et seq., the Oil Pollution Act, 33 U.S.C. §§ 2701, et seq., the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq. ("CERCLA"), the Clean Water Act, 33 U.S.C. §§ 1251, et seq., or any other State or Federal common law, statute, or regulation . . . .

(Ex. I, § ¶ 10.) The Consent Judgment specifically provides CERCLA contribution protection as follows:

> This Consent Judgment constitutes a judicially-approved settlement within the meaning of N.J.S.A. 58:10-23.11f(a)(2)(b) and 42 U.S.C. § 9613(f)(2) for the purpose of providing protection from contribution actions for Natural Resource Damages.

(Exhibit I, ¶ 25.) On August 20, 2007, the NJDEP published the Consent Judgment in the New Jersey Register. (New Jersey Register, Vol. 39, Issue 16 (Aug. 20, 2007), Ex. J to Adelman Decl.)

NOT FOR PUBLICATION

As the Second Circuit has found, "'response action' is a CERCLA-specific term describing an action to clean up a site or minimize the release of contaminants in the future." UGI Utilities, 423 F.3d at 96.  The Consent Judgment contemplates and resolves CERCLA liability and provides that the settlement for "natural resource damages" include the "payment of compensation for the restoration of, the lost value of, injury to, or destruction of groundwater and groundwater services."  (Ex. I, § ¶ 10(b).)  It cannot be said that this "payment of compensation for the restoration . . . of groundwater and groundwater services" is not a cost for a response action to clean up a site under CERCLA.  Metex may ultimately prevail that the Consent Judgment did not actually resolve any costs for a response action or that Metex is not liable for contribution.  However, at this stage, accepting Champion's factual allegations as true, the Court finds that Champion has stated a claim under section 113(f)(3)(B).  Accordingly, Metex's motion to dismiss count three of Champion's Third Amended Complaint is denied.

### B.      Count One of Metex's Counterclaim

As a preliminary matter, Metex filed a cross-motion to amend count one of its counterclaim in response to Champion's motion to dismiss that count.  "In evaluating challenges to the denial of opportunity to amend we have held consistently that leave to amend should be granted freely."  Dole v. Arco Chemical Co., 921 F.2d 484, 486-87 (3d Cir. 1990).  A liberal "approach ensures that a particular claim will be decided on the merits rather than on technicalities."  Id. (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6, § 1471 at 505 (2d ed. 1990)).  In order to have a full and complete record, the Court will permit Metex to amend its counterclaim.

-14-

NOT FOR PUBLICATION

The original counterclaim sought contribution for costs associated with contamination present at One Ethel Road. The broader, amended counterclaim seeks contribution for costs incurred in addressing contamination at the One Ethel Road site, the Metex site and the Champion site. The amended counterclaim reads:

> Metex is entitled to contribution from Interlee pursuant to section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), for any and all costs Metex has incurred or may incur arising out of the investigation and remediation of any environmental condition resulting from the discharge of hazardous substances at the 191 Property.

> WHEREFORE, Metex demands judgment against Interlee as follows:

> (a)   An Order declaring that Interlee must pay all damages assessed against Metex in this action over its fair share for any past costs and additional costs in connection with the remediation of contamination at the Metex Property, One Ethel Road Property and/or the 191 Property.

Metex's Counterclaim, ¶ 17 (Dkt. Entry No. 97, Sept. 11, 2007). Champion's motion to dismiss will be analyzed against Metex's amended counterclaim.

Section 113(f)(1) provides in relevant part that "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1); Cooper Industries, 543 U.S. 157, 161 (2004) (confirming that under CERCLA a section 107 claim is a statutory prerequisite for a CERCLA section 113(f)(1) contribution claim). Metex is not subject to section 107(a) liability for the One Ethel Road site. Metex's original counterclaim would fail to state a claim upon which relief can be granted because it cannot factually allege that there is a civil action under sections 106 or 107(a) of CERCLA arising from the One Ethel Road site.

-15-

NOT FOR PUBLICATION

Now that this Court has reinstated Champion's section 107(a) claim against Metex for contamination in the Champion site as permitted by <u>Atlantic Research</u>, 127 S. Ct. 2331, Metex seeks to amend its counterclaim to include a section 113(f)(1) claim for contribution if Metex is liable under section 107(a) of CERCLA for the Champion site.[2]  Metex alleges that it may be subject to section 107(a) 1iability for the remediation and cleanup of the contamination on the Champion site.  Metex also alleges that Champion is liable or potentially liable under section 107(a) for its own site and that Metex is entitled to contribution for Champion's equitable distribution of liability.  Here, at the pleading stage, Metex has sufficiently pleaded all elements for a section 113(f)(1) claim.  While Champion is correct to argue that whether Metex ultimately has a right to contribution under section 113(f)(1) is contingent upon (1) the finding of common liability and (2) the inequitable distribution of that liability.  <u>Atlantic Research</u>, 127 S. Ct. at 2338.  Those findings would be inappropriate now at the pleading stage.  Accordingly, Champion's motion to dismiss count one of Metex's counterclaim is denied.

## C.    Count Two of Metex's Counterclaim

Champion moves to dismiss count two of Metex's counterclaim pursuant to Rule 12(b)(6).  Count two of Metex's counterclaim alleges that:

> [Champion] is liable pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for any and all costs Metex has incurred or may incur arising out of the

---

[2]  Champion argues that Metex could have included the new amendments with its original counterclaim in 2003, because its amendment is untimely.  Although this may be true, Champion filed its third amended complaint in August 2007 and first moved to dismiss Metex's counterclaims in October 2007.  The pleadings in this case have been prolonged by recent changes in the jurisprudence of CERCLA as demonstrated by two Supreme Court decisions issued during the pendency of this case.  Given these developments, this Court permitted amendments more liberally.

**NOT FOR PUBLICATION**

environmental condition, investigation and remediation of the One Ethel Road Property.

Metex's Counterclaim, ¶ 25. A court may impose section 107(a) liability when the party seeking the imposition of liability establishes the following four elements: (1) the potentially liable party is a potentially responsible party under section 107(a); (2) hazardous substances are disposed at the facility; (3) there is a release or a threatened release of the hazardous substances from the facility; and (4) that release caused the incurrence of response costs. See United States v. Alcan Aluminum Corp., 964 F.2d 252, 258 (3d Cir. 1992). Under section 107(a), potentially responsible parties include:

(1)     the owner and [or] operator of a . . . facility [current owner/operator],
(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of [former owner/operator],
(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances . . . and
(4)     any person who accepts or accepted any hazardous substances for transport . . .

Alcan, 964 F.2d at 257 n.4 (quoting 42 U.S.C. § 9607(a)).

Metex alleges that Interlee is the owner and/or operator of the Champion site where there was a discharge of hazardous substances at that site. Metex has incurred response costs in addressing contamination on the One Ethel Road site for which Champion, as the successor to Interlee, is the party responsible under CERCLA section 107(a). See Metex's Opp. Br. at 10-11. Champion's main argument is that Metex cannot factually allege that it incurred response costs because Metex's installation of monitoring wells were to delineate Metex's own groundwater contamination from the Metex site. The Court agrees with Metex that Champion's main

NOT FOR PUBLICATION

argument concerns a resolution of a material, factual dispute that is inappropriate at the pleading stage. Accordingly, Champion's motion to dismiss count two of Metex's counterclaim pursuant to Rule 12(b)(6) is denied.

> ### D.      Count Three of Metex's Counterclaim

Champion moves to dismiss count three of Metex's counterclaim pursuant to Rule 12(b)(6). Count three of Metex's counterclaim alleges that:

> Pursuant to the Spill Act, Metex is entitled to contribution from [Champion] for the costs Metex has incurred or may be required to incur in connection with the environmental condition, investigation and remediation of the One Ethel Road Property.

Metex's Counterclaim, ¶ 31.

Champion contends that Metex's claim under the Spill Act is barred by the six-year statute of limitations under N.J.S.A. 2A:14-1, as this Court had ruled in its July 2005 opinion and order. Champion Labs., 2005 U.S. Dist. LEXIS 37068, at *17 (WHW) ("A private cause of action for contribution under the Spill Act is most analogous to a common law environmental tort claim, for which the period of limitations is six years.") (citing New West Urban Renewal Co. v. Westinghouse Elec. Corp., 909 F. Supp. 219, 228 (D.N.J. 1995)). As evidence that Metex knew or should have known that it had a Spill Act claim but did not pursue it until more than six years later, Champion presents the following evidence. As the result of the NJDEP's demand to install the OS Wells to delineate Metex's groundwater contaminant plume, Metex installed and sampled the wells, which caused it to make a conclusion that Interlee had contaminated the OS Wells located on the One Ethel Road site. (Exs. G & H, METEX-05059.) On February 1, 1996, Metex's environmental consultants reported to Metex that based on the sampling results from the

-18-

NOT FOR PUBLICATION

OS Wells, the "contamination noted in Metex wells OS-1-S, OS-2-1 and OS-3-D is <u>indicative</u> of the Interlee contaminant plume. . . ."  (Ex. H, METEX-05059 (emphasis added).)   Champion argues that at least by February 1, 1996, Metex believed that Interlee was responsible for contamination of the OS Wells.  The statute of limitations began to run against Metex for its Spill Act claims when it became aware or reasonably should have become aware that it had been injured "through the fault of another."  <u>Baird v. American Med. Optics</u>, 155 N.J. 54, 68 (1998). Instead of bringing its Spill Act contribution claim by February 1, 2002–within six years–it brought its counterclaim on February 7, 2003.

First, Metex contends that Champion should not be allowed to move for dismissal with evidence outside the pleadings unless the Court converts this Rule 12(b)(6) motion to a motion for summary judgment under Rule 56 and gives all parties a "reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Second, the language relied on by Champion to establish that Metex knew in 1996 that contamination was caused by the Champion site is equivocal, as the consultant wrote only that the data was "indicative" of the Champion plume.  Champion omits the sentence immediately following, in which Metex's consultant proposes further investigation to determine whether the contamination derives from Interlee or Metex.  Under New Jersey law, the discovery rule provides that a cause of action does not accrue until the plaintiff knew or should have known that it is injured and that another is at fault.  <u>Caravaggio v. D'Agostini</u>, 166 N.J. 237, 245-46 (2001); <u>Lapka v. Porter Hayden Co.</u>, 162 N.J. 545, 564 (2000).  This language suggests further testing is necessary to determine the source of contamination.

**NOT FOR PUBLICATION**

The Court agrees with Metex that Champion's argument of when Metex believed that Champion was responsible for the contamination is based on a genuine issue of material fact. If the Court were to entertain Champion's motion to dismiss as a motion for summary judgment, whether an "indicative" fact means that the person learning it would be on notice depends on the quality and nature of that fact. This question, essentially a material factual dispute, is best left to a reasonable jury. Whether under Rule 12(b)(6) or Rule 56 analysis, the motion to dismiss count three of Metex's counterclaim is denied.

<u>**CONCLUSION**</u>

Metex's motion to dismiss count three of Champion's Amended Complaint is granted in part and denied in part. Metex's cross-motion to amend count one of its counterclaim is granted. Champion's motion to dismiss counts one, two and three of Metex's counterclaim is denied.

April 21st, 2008                                    s/William H. Walls
                                                    United States Senior District Judge