**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————— :
                                                        :
CHAMPION LABORATORIES, INC.,        :
                                                        :
                      Plaintiff,             :                **OPINION**
                                                        :
          v.                                     :               Civ. No. 02-5284 (WHW)
                                                        :
METEX CORPORATION et al.,              :
                                                        :
                      Defendants.          :
———————————————————— 

**Walls, Senior District Judge**

      Plaintiff, Champion Laboratories, Inc. ("Champion"), moves this Court, pursuant to

Rules 59(a) and 52(b) of the Federal Rules of Civil Procedure, to amend the Findings of Fact and

Conclusions of Law in its August 12, 2009 Opinion and to enter judgment in Champion's favor.

Pursuant to Rule 78.1 of the Local Civil Rules, the Court decides the motion without oral

argument.  The Court denies Champion's motion.

**BACKGROUND**

      During December 2008 to May 2009, the Court held a bench trial.  The trial yielded over

2,700 pages of transcript.  The Court evaluated the credibility of seventeen witnesses and entered

186 exhibits into evidence.  The Court reviewed the parties' post-trial submissions with the

exhibits in evidence, witness transcripts, and the Court's own notes and evaluations from trial.

The Court rendered its Findings of Fact and Conclusions of Law on August 12, 2009.  See

Champion Labs., Inc. v. Metex Corp. et al., No. 02-cv-5284, 2009 U.S. Dist. LEXIS 71200

(D.N.J. Aug. 12, 2009) (the "Opinion").

1

In the Opinion, the Court ruled in favor of Defendant Metex Corporation ("Metex") on Champion's Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and state common law claims because of the Plaintiff's failure to meet its burden of proof by a preponderance of the believable evidence.  The Court found that Champion could not recover any response costs under Section 107(a) of CERCLA because it had not demonstrated that it incurred any "necessary costs of response consistent with the national contingency plan." Id. at 37.  The Court held that Champion was not entitled to contribution from Metex under Section 113(f) of CERLA because "the settlement for which Champion seeks contribution encompasses only its own liability." Id. at 44.  The Court denied Champion's state law claims on the ground that Champion had failed to prove by a preponderance of the believable evidence that the contamination on the Interlee Site was the result of migration from the Metex site. Id. at 46.[1]

On August 26, 2009, Champion moved this Court under Rules 52(b) and 59(a)(2) to revise its Findings of Fact and Conclusions of Law and to enter judgment in its favor.  (Dkt 223.)

## STANDARD

Even though Champion moves under Rules 52 and 59 of the Federal Rules of Civil Procedure, Local Rule 7.1(i) "governs motions for reconsideration filed in New Jersey." Byrne v. Calastro, No. 05-cv-68, 2006 U.S. Dist. LEXIS 64054, at *1 (D.N.J. Aug. 28, 2006).  See also Marshak v. Treadwell, No. 95-cv-3794, 2008 U.S. Dist. LEXIS 10567, at *12 n.2 (D.N.J. Feb. 13, 2008) ("Although the [movants] have moved for reconsideration under Rule 52, Rule 59, and

---

[1] This Court ruled in favor of Champion on Metex's CERCLA and state law counterclaims. Metex has not contested that ruling.

Rule 60 of the Federal Rules of Civil Procedure . . . in the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i).") (citations omitted).[2]

The Third Circuit has stated that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). As a general matter, parties seeking reconsideration must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Under Local Civil Rule 7.1(i), parties moving for reconsideration must show "concisely the matter or controlling decisions which the parties believe the Judge . . . has overlooked." L. Civ. R. 7.1(i).

Reconsideration is justified only when "dispositive factual matters or controlling decisions of law . . . were presented to, but not considered by, the court in the course of making the decision at issue." Yurecko v. Port Auth. Trans-Hudson Corp., 279 F. Supp. 2d 606, 609 (D.N.J. 2003). See also United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Only where the court has overlooked matters that, if considered by the court, might reasonably have resulted in a different legal conclusion, will it entertain such a motion."). As a result, a motion for reconsideration is an "extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). See also P. Schoenfeld

---

[2] Because Champion's motion is construed as a motion for reconsideration under Local Rule 7.1(i), the Court disregards the Reply Brief that Champion filed without leave of Court on September 25, 2009. See L. Civ. R. 7.1(d)(3) ("No reply papers shall be filed on a motion for reconsideration pursuant to L. Civ. R. 7.1(i) . . . unless the Court otherwise directs.").

Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 352-53 (D.N.J. 2001) ("Because

reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to

these rules are to be granted sparingly.") (internal quotation marks omitted).

## DISCUSSION

Champion argues that the Court should revise its Findings of Fact and Conclusions of

Law because the Court "misperceived the overwhelming quantum of evidence demonstrating

that a portion of the groundwater contamination at [the Interlee Site] occurred as a result of

discharges of hazardous substances at [Metex's] property."  (Br. of Pl. Champion Labs., Inc. in

Support of Relief under Rules of Civil Procedure 59(a)(2) and 52(b) ("Br.") at 1.)  Champion's

primary argument appears to be that the Court disregarded the purportedly "unambiguous"

conclusion of the New Jersey Department of Environmental Protection ("NJDEP") that some of

the contamination at the Interlee site had migrated from the Metex site.  (Br. at 2.)  Champion

contends that the Court disregarded "entire sections of NJDEP correspondence that plainly state

that Metex contributed to the contaminant plume at the Interlee Site as well as NJDEP geologist

Joel Fradel's testimony to the same conclusion."  (Br. at 11.)

Champion attributes the Court's purported mistake to a confusion of standards.

Champion says that the NJDEP did not issue a "no further action" letter ("NFA") to Champion

(which would have absolved Champion from liability for contamination at the Interlee site)

because the NJDEP was not satisfied that all of the contamination at the Interlee site had

migrated from Metex.  But Champion notes that, in this action, it needed only to show that some

of the contamination at the Interlee site had migrated from Metex.  (Br. at 2.)  Champion

maintains that this is the "fundamental difference" that the Court overlooked.  (Br. at 2.)

4

Metex counters that "neither the [NJDEP] correspondence and testimony nor the sampling results support Champion's claims, let alone compel a contrary finding. As well, these items ignore the exhaustive body of evidence presented at trial which was considered by the Court and supports its findings that Champion failed to prove contaminant migration." (Brief of Def. Metex Corp. in Opp. to Pl. Mot. for Relief Under Federal Civil Rules 59(a)(2) and 52(b) at 1.)

## I. Whether the Court Overlooked Any Dispositive Matter

The Court finds that Champion cannot prevail on its motion for reconsideration because it has failed to point to any factual or legal matter that was "brought to the Court's attention but not considered" during the bench trial. Cendant, 161 F. Supp. at 353. Although Champion claims that certain exhibits (including Pl.'s Tr. Exs. 21, 155, 204, 216 and Def.'s Tr. Ex. 123) show that the NJDEP concluded that Metex was responsible for some of the contamination at the Interlee site (Br. at 3-4), the Court reviewed each of these exhibits before rendering its Opinion. The Court disagreed with Champion's interpretation of them and found that they carried relatively little weight compared to other evidence in the record. Because the Court did not overlook any of the exhibits that Champion now advances, Champion's motion for reconsideration cannot succeed based on these exhibits. See Ashton v. AT&T Corp., No. 03-cv-3158, 2006 U.S. Dist. LEXIS 4787, at *5 (D.N.J. Feb. 2, 2006) (noting that a matter "is not deemed overlooked because it is not specifically addressed in a court's opinion" and denying the motion for reconsideration on the basis that the court "did not overlook any of the Plaintiff's claims").

Champion is also incorrect that the Court overlooked the distinction between the standard applied by the NJDEP in deciding whether to issue an NFA and the governing standard here.

5

Contrary to Champion's contention, the Court did not require Champion to prove that most or all of the contamination at the Interlee site had migrated from Metex. The Court established that, to recover under CERCLA, it "is not required that the defendant cause actual contamination of the plaintiff's property. Therefore, for purposes of CERCLA, Champion need only prove that the release of contaminants on the Metex Site caused it to incur response costs." (Op. at 37 (citation omitted).) The Court stated that, to prevail on its state law claims, "Champion must prove that contaminants on the Metex Site migrated onto its site." (Op. at 45.) The Court correctly held that the relevant standard is whether <u>any</u> of the contamination at the Interlee site had migrated from the Interlee site. The Court did not overlook the distinction between this standard and the controlling standard for the NJDEP's inquiry.[3]

Champion's motion for reconsideration must also be denied because the evidence that Champion now advances was not "dispositive" to the Court's conclusions. <u>See Yurecko</u>, 279 F. Supp. 2d at 609. Even if the Court had adopted Champion's interpretation of the NJDEP communications, the Court would still have ruled against Champion on its CERCLA § 107(f) and state common law claims. This is so for two reasons.

First, even if the NJDEP did conclude that Metex caused some of Champion's contamination, the Court was under no obligation to accept this as definitive dogma. The Court considered a great deal of evidence, some of which was never considered by the NJDEP. As the factfinder, the Court was required to consider the entire record before it and evaluate the weight

---

[3] Champion also argues that the Court incorrectly applied the standard applicable to other statutes (such as the Industrial Site Recovery Act) that are not at issue in this action. (Br. at 1.) That argument fails because, as discussed, the Court applied the correct standard.

and credibility of the evidence presented.  The Court properly considered the entire record in

reaching its conclusion that none of the contamination at the Interlee site had migrated from

Metex.  The evidence that the Court considered, much of which is described in the Court's

Findings of Fact, includes:  Lee Filter's waste manifests submitted to the NJDEP in the 1980s

reporting that it had disposed hundreds of gallons of methylene chloride at the Interlee site

(Findings of Fact ¶¶ 21, 145); Champion's own acknowledgements before 1995 (supported by

scientific evidence) that a septic tank formerly in use at the Interlee site was the source of the

site's contamination (Findings of Fact ¶¶ 12, 40-47, 52); and Champion's continued failure to

install instruments necessary to support its claim that the Metex contaminant plume had migrated

to the Interlee Site (Findings of Fact ¶¶ 63-67, 70-72).  The Court also considered a wide range

of scientific evidence, such as the low transmissivity of the bedrock underlying the Metex and

Interlee sites (Findings of Fact ¶¶ 78-81), and the absence of any tests showing a major bedding

plane parting between the two sites.  (Findings of Fact ¶ 98.)

      The Court evaluated the reliability and credibility of the witnesses.  See United States v.

Kole, 164 F.3d 164, 177 (3d Cir. 1998) ("Credibility determinations are the unique province of a

fact finder, be it a jury, or a judge sitting without a jury.").  Most significantly, the Court found

the testimony of Metex's hydrogeology expert, Daniel Nachman, to be credible.  (See, e.g.,

Findings of Fact ¶ 94.)  By contrast, the Court found the testimony of Champion's expert,

Edward Rashak, to be unreliable and incredible.  As example, the Court found that Mr. Rashak's

diagrams of the Metex contaminant plume migrating to Interlee Site were not credible because

they were "inconsistent" with each other and "distort[ed] the plumes."  (Findings of Fact ¶¶ 119-

120.)  Similarly, the Court found that Mr. Rashak's depictions of the groundwater flow "lack[ed]

credibility" and were "incredible."  (Findings of Fact ¶¶ 121-122.)  The Court also found that

Mr. Rashak's diagrams and depictions lacked any scientific explanation to support them.  (See,

e.g., Findings of Fact ¶ 122 ("Mr. Rashak's depiction of an allegedly simple plume that both

dives and then climbs defies the basic principle of hydrogeology:  Because groundwater moves

in the direction of hydraulic head, that is, from an area of high pressure to an area of low

pressure, it can migrate either downward or upward in a particular area, but cannot travel in both

directions.").)  These findings were squarely within the province of the Court, as trier of fact, to

make. See Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 496 (D.N.J. 2002) ("Analysis of

the credibility and weight of the expert's conclusions themselves . . . is reserved for the trier of

fact.").

        The Court found that the overwhelming qualitative weight of the evidence and testimony

presented at trial, including testimony and evidence never presented to the NJDEP, supported the

Court's conclusion that none of the contamination at the Interlee Site had migrated from the

Metex Site.  The Court would not have concluded differently even if it had interpreted the

NJDEP's findings in the manner advocated by Plaintiffs.  In contrast to the NJDEP, this Court

was obligated to evaluate and focus on the question of whether some of the contamination from

Metex migrated to the Interlee Site.  And unlike the NJDEP, this Court looked at evidence

specifically aimed at answering this question.  As discussed, this Court relied upon a broad

spectrum of scientific evidence, much of which has never been presented to the NJDEP, when

reaching the conclusion that Champion had failed to show by a preponderance of the believable

evidence that contamination from Metex had migrated to the Interlee  Site.  It was the province

of the Court to ignore suppositions made by the NJDEP that were not supported by other

believable evidence in the record.

That is exactly what the Court did with respect to statements made by Champion's

geologist Joel Fradel.  Champion claims that Mr. Fradel's statments support its contention that

the NJDEP concluded that some of the contamination at the Interlee site was caused by Metex.

Specifically, Champion points to this testimony by Mr. Fradel:

> Q.  At the time that the DEP wrote this letter, the DEP had—is it
> your understanding that the DEP had accepted that there was a
> clear contaminant concentration in the 70 to 90 foot zone showing
> groundwater contamination from the Metex site to the Interlee
> site?
>
> A. It showed higher concentrations in the OS 3 up gradient of the
> Interlee site.
>
> Q. I understand that.  That's why, is it your understanding that that
> was adequate demonstration by Interlee of this clear contaminant
> concentration gradient in the deep zone from Metex to Interlee?
>
> A. Yes, for the deep zone at that location.

(Transcript of March 16, 2009, at 104.)

Contrary to what Champion suggests, Mr. Fradel's conclusion was equivocal, to

be charitable. When asked: "But Interlee has shown that a portion of the contamination at the

Interlee site is from the Metex site, right, sir?" He answered, "I don't know if Interlee has shown

that.  I believe that a portion of the contamination from the Metex site has migrated on to the

Interlee site."  (Id. at 86.)  Mr. Fradel's proffered "belief" is not equivalent to an NJDEP

conclusion that Metex caused some of the contamination at Interlee.  The Court evaluated Mr.

Fradel's testimony in its entirety, and found that, on the whole, he did not provide the Court, as

the finder of fact, with an adequate factual or scientific basis to support this belief.  Belief absent

a foundation of reasons and facts acceptable to the factfinder is speculation.  It follows that Mr. Fradel's speculation was ignored by the factfinder.

Because this evidence urged by Champion was not dispositive to the Court's finding that Champion failed to demonstrate by a preponderance of the believeable evidence that any contamination at the Interlee Site had migrated from the Metex Site, Champion's motion for reconsideration is denied.

Second, with respect to Champion's CERCLA § 107 claims, the evidence offered by Champion was not dispositive because, even if Champion had shown that contamination at the Interlee site had migrated from the Metex site, Champion failed to show that it had incurred any costs that were "necessary costs of response . . . consistent with the national contingency plan." (Op. at 37 (quoting 42 U.S.C. 9607(a)).)  Such a showing is necessary for a CERCLA § 107 recovery.  See  Key Tronic Corp. v. United States, 511 U.S. 809, 811 (1994) (noting that expenditures are only recoverable under CERCLA § 107(a)(4)(B) if they are deemed to be "necessary costs of response" under the statute).

Champion argues that the Court erred in finding that Champion did not incur any costs that were "necessary costs of response" under CERCLA.  Champion contends that, under Key Tronic, it incurred investigatory costs that are recoverable under CERCLA because they were incurred "for the purpose of prompting the NJDEP to require Metex to select a remedy and remediate its site so as to contain Metex's off-site contaminant plume and prevent further migration of Metex's contaminant releases to the Interlee site."  (Br. at 21-22.)

As an initial matter, the Court finds that Champion is improperly attempting, on a motion for reconsideration, to relitigate the Court's holding that Key Tronic bars Champion's CERCLA § 107 recovery claim.  The Court has already rejected Champion's claim "that the costs [it

10

incurred] relate to work performed to identify another responsible party under <u>Key Tronic</u>."  (Op. at 41.)  Because a motion for reconsideration "is not an appeal" and "mere disagreement with a court's decision . . . is inappropriate on a motion for reargument," the Court need not reevaluate its application of <u>Key Tronic</u>.  <u>Yurecko</u>, 279 F. Supp. 2d at 609.

That said, for the benefit of the reader, the Court's application of <u>Key Tronic</u> was correct. In <u>Key Tronic</u>, the Supreme Court held that "some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B). The component of Key Tronic's claim that covers the work performed in identifying other PRP's [potentially responsible parties] falls in this category."  <u>Key Tronic</u>, 511 U.S. at 820.  The Supreme Court noted that Key Tronic's efforts to identify other PRP's "significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs."  <u>Id.</u>

Here, as the Court found, Champion did not incur any costs in attempting to identify Metex because "it had identified Metex as the alleged cause of the contamination on the Interlee Site in 1995 before it incurred the costs it now seeks to recover."  (Op. at 41.)  At that time, the NJDEP had already identified Metex and was taking action against it, obviating any need for Champion to "prompt" the NJDEP into action.  Champion's supposed efforts to identify Metex as a PRP did not benefit the cleanup effort and served no purpose other than as an attempt to reallocate costs.  This is a non-recoverable cost under <u>Key Tronic</u>.  <u>See, e.g.</u>, <u>Syms v. Olin Corp.</u>, 408 F.3d 95, 104 (2d Cir. 2005) ("Somerset has not presented evidence that its efforts uncovered the identity of any PRPs.  The government was already aware of Olin's activities, and there is no evidence in the record that Somerset's duplicative identification of Olin significantly benefited the overall clean-up effort."); <u>Calabrese v. McHugh</u>, 170 F. Supp. 2d 243, 267 (D. Conn. 2001)

11

("[I]n this case, unlike <u>Key Tronic</u>, plaintiff's expert did not identify any new potentially responsible parties."); <u>Ekotek Site PRP Comm. v. Self</u>, 1 F. Supp. 2d 1282, 1295 (D. Utah 1998) ("[T]he great majority of the work with the [PRP] database came after the PRPs had been identified from the Site records. . . . Such purposes are related to the reallocation of costs, however, and under <u>Key Tronic</u> those costs are not recoverable.").

In sum, Champion does not point to any dispositive factual or legal matter overlooked by the Court.  Champion's motion for reconsideration is denied.

**II.   Propriety of the Court's Interpretation of the NJDEP Conclusions**

Although not critical to the denial of Champion's motion for reconsideration, the Court addresses Champion's argument that the Court's interpretation of the NJDEP evidence was incorrect.   As example of an NJDEP communication that Champion states the Court misinterpreted, Champion points to the NJDEP's April 15, 2008 Compliance Status Notice to Champion. (Op. at 3-4 (citing Pl.'s Tr. Ex. 216 (the "Notice")).)  The Notice states in relevant part:

> Champion's proposal for no further action and that Metex is the source of the bulk of the contamination at the Interlee site, remains unacceptable, as unsupported.  The sampling performed provides no new information in support of Champion's claim as the sampling was from existing wells and the results were similar to previous events. . . .
>
> The NJDEP previously concluded that this contamination was attributed to the Interlee site, not Metex.   The consistent concentrations of PCE in only this well is indicative of a discharge in or near the area of that well and is considered an Interlee site related release.  It is also noted that the concentrations of the other chlorinated VOCs detected at the Interlee site, spike near the septic tank to greater than the levels coming onto the site, further supporting an on-site discharge.  However, based on the ground water flow, the NJDEP also considers that contamination originating from the Metex site, that is similar to the contaminants

> on the Interlee site, have migrated onto and contribute to the ground water contamination at the Interlee site. As a result, the NJDEP considers the Interlee site ground water contamination to be a co-mingling plume.
>
> As such, it is impossible for the NJDEP to make a determination on responsibility without the information required by the NJDEP's letter dated September 20, 2001. Champion has refused to complete this investigation and/or perform the required remedial action. . . .

(Pl.'s Tr. Ex. 216.) Champion disagrees with the Court's finding that the Notice shows that the "NJDEP has concluded that Champion has not provided sufficient proof to demonstrate that the Metex plume has migrated to the Interlee Site." (Findings of Fact ¶ 69.) Champion argues that the Notice actually establishes that the NJDEP concluded that Metex caused at least some of Champion's contamination. Champion relies upon the following language in the Notice: "[T]he NJDEP also considers that contamination originating from the Metex site . . . have migrated onto and contribute to the ground water contamination at the Interlee site. As a result, the NJDEP considers the Interlee site ground water contamination to be a co-mingling plume." (Br. at 4 (quoting Pl.'s Tr. Ex. 216).) Champion claims that the Notice demonstrates that the NJDEP "unambiguously" concluded that at least some contamination from the Metex site migrated to the Interlee site. (Br. at 2-4.)

The Court did not then and does not now accept Champion's interpretation of the Notice. As the Court determined in its Findings of Fact, the gravamen of the April 15, 2008 Notice is to chide Champion for its continued refusal to provide the NJDEP with information, necessary to support Champion's migration claims, that the NJDEP first requested on September 20, 2001. (See Pl.'s Tr. Ex. 216 ("[I]t is impossible for the NJDEP to make a determination on responsibility without the information required by the NJDEP's letter dated September 20,

2001."); Findings of Fact ¶ 69 ("NJDEP has concluded that Champion has not provided sufficient proof to demonstrate that the Metex plume has migrated to the Interlee Site.").)  The Notice is consistent with other evidence that the Court cited to show that  Champion has continually refused to cooperate with the NJDEP's investigatory requests.  (See, e.g., Findings of Fact ¶ 63 ("In 1997, NJDEP instructed Champion to install two wells upgradient of the Interlee Site, close to Talmadge Road, in an effort to test its claim.  Champion has not installed the wells.") (citing Pl.'s Ex. 238 and Tr. 4/29/09 at 55-56); Findings of Fact ¶ 67 ("In the nearly seven years passed since the NJDEP issued the Notice of Violation, Champion has not installed the cluster wells or performed the other obligations necessary to support its migration claim.") (citing Def.'s Ex. 124).)  This evidence shows that, at most, the NJDEP's inquiry was ongoing, and that its inquiry was hampered by the lack of cooperation by Champion, which had not provided sufficient information to allow the NJDEP to determine conclusively whether Metex was responsible for contamination at the Interlee Site.  The evidence does not reflect that the NJDEP "repeatedly and unambiguously" reached the conclusion that Champion attributes to it.

## CONCLUSION

Champion cannot prevail on its motion for reconsideration because it does not point to any dispositive factual or legal matter that the Court overlooked.  Champion's motion for reconsideration is denied.

December 23, 2009                                    s/William H. Walls
                                                     United States Senior District Judge

14